**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| HOWARD ROSEN, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC., a Delaware Corporation,<br><br>               Defendant. | Case No. 2:26-cv-1823<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**TABLE OF CONTENTS**

**Page**

I.      NATURE OF THE ACTION ...................................................................................1

II.     JURISDICTION AND VENUE ..............................................................................3

III.    PARTIES ................................................................................................................3

IV.     FACTUAL ALLEGATIONS ..................................................................................4

    A.    Amazon's Publicly Pronounced "Maniacal" Focus on Low Prices for Consumers, and Guarantee of Best Prices Among Major Retailers ........................4

    B.    Notwithstanding Its Promises, Amazon Passed on Tariff Costs, Plus More, to Consumers ........................8

    C.    Amazon's Concealment and Misrepresentations with Regard to Price Increases Were in an Attempt to Appease Potential Governmental Contractual Counterparties and the Administration ..............................11

V.      CLASS ALLEGATIONS .......................................................................................15

COUNT I: WASHINGTON CONSUMER PROTECTION ACT WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.* .................................................................18

COUNT II: UNJUST ENRICHMENT/QUASI-CONTRACT..........................................20

COUNT III: CONSTRUCTIVE TRUST ..........................................................................21

PRAYER FOR RELIEF ..................................................................................................22

CLASS ACTION COMPLAINT - i
No. 2:26-cv-1823
011388-11/3597415 V2



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Plaintiff Howard Rosen ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action for damages and equitable relief on behalf of a nationwide class against Amazon.com, Inc. ("Amazon" or "Defendant") for: (1) violations of the Washington Consumer Protection Act, RCW 19.86.010, *et seq*; (2) unjust enrichment; and (3) constructive trust.

Plaintiff alleges the following based on his personal knowledge with respect to his own acts, and on information and belief as to all other information.

## I.   NATURE OF THE ACTION

1.   This consumer protection class action arises out of Amazon's pass-through and pass-on of illegal tariffs and failure to keep the explicit promises it made to its customers. Plaintiff seeks to compel Amazon to recompense Plaintiff and Class members for illegal tariffs paid by them, in full or in part, under the International Emergency Economic Powers Act ("IEEPA") and to compel Amazon to obtain a refund of tariff payments, which only Amazon, and not Plaintiff and Class members, can seek.

2.   Amazon knows that "low prices matter to customers—they always have and they always will." It also knows that "people have many options for where to shop, and consistently low prices earn customer trust and keep them coming back."[1]

3.   Because of this, Amazon's business model is built around its promises to its customers that it is "obsessed over offering customers low prices across our wide selection of products,"[2] and that it "constantly evaluates Amazon's prices to offer customers low, competitive prices everyday."[3] Its website, where most consumers purchase the goods it offers, boasts that Amazon "is the lowest-price retailer in the U.S." and "make[s] saving money easy for customers" aiming "to offer the lowest prices across Earth's largest selection every day."[4] Indeed, Amazon is

---

[1] Amazon Staff, *Amazon's approach to providing customers low prices every day*, *at* https://www.aboutamazon.com/news/retail/amazon-pricing (last updated Jan. 17. 2025).

[2] *Id.*

[3] Amazon, *Price Matching*, *at* https://www.amazon.com/gp/help/customer/display.html? nodeId=G9EAYKPV5 YYDB8P7.

[4] Amazon Staff, Amazon is the lowest-priced retailer in U.S. for the eighth year running, according to an independent study, Nov. 14, 2024, *at* https://www.aboutamazon.com/news/retail/amazon-lowest-priced-us-retailer-profitero-study.

"proud of this—and will never stop working hard to compare and match low prices to competitors', making Amazon the place customers think of for low prices."[5]

4.      In 2025, President Donald J. Trump implemented nearly worldwide tariffs on goods imported into the United States by Executive Order, purportedly authorized under the IEEPA. These tariffs had a broad impact on prices for imported consumer goods across the spectrum.

5.      As a result of the IEEPA tariffs, Amazon, as an importer of record, would have to pay tariffs on imported goods directly. This posed a problem. The profit margins for its marketplace are low—typically with operating margin hovering around 5%.

6.      Notwithstanding what would have been a significant impact on profitability had Amazon refused to pass on the tariff increases by raising prices, Amazon CEO Andrew Jassy initially advised its customers that Amazon would absorb price increases due to tariffs to keep its low price promises to consumers.[6]

7.      The reality is that Amazon *had* to pass on these tariffs to consumers. In many cases, the tariffs imposed greatly exceeded Amazon's profit margins on the products on which they were charged. In fact, despite its representations and promises to consumers, Defendant did exactly this.

8.      In January 2026, after months of denials and representations that Amazon's prices had not been affected by tariffs, in a talk during the 2026 Davos World Economic Forum conference, Amazon CEO Andy Jassy admitted that Amazon increased costs due to the IEEPA tariffs and passed those costs on to customers.[7]

9.      In February 2026, the United States Supreme Court held that the executive branch could not unilaterally use the IEEPA to impose tariffs, and accordingly, the IEEPA tariffs were illegal and required to be refunded. The tariff refund process began thereafter and is now underway.

10.      Amazon is entitled to seek a refund of tariffs paid on products for which it was an importer of record on behalf of consumers to whom Amazon passed on the tariff costs. Amazon has

---

[5] Amazon Staff, *supra* note 1.

[6] Lori Ann LaRocco, Trump's new global tariffs add to risks of higher prices, less choice as retail's spring ordering season starts, CNBC, Aug. 1, 2025, at https://www.cnbc.com/2025/08/01/trump-trade-war-tariffs-retail.html.

[7] https://www.banking.senate.gov/imo/media/doc/20260225lettertojassyonamazonpricesandtariffs.pdf; Annie Palmer, *Amazon CEO Jassy says Trump's Tariffs have started to "creep" into prices*, CNBC, Jan. 20, 2026, https://www.cnbc .com/2026/01/20/amazon-jassy-trump-tariffs-prices-shoppers.html.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

not stated whether it will seek a refund and has disclosed no plans to refund consumers, such as Plaintiff and Class members, for the illegal tariff amounts these consumers ultimately paid. Accordingly, Amazon has violated the law and breached its promises and agreements with consumers and rendered its representations to them with regard to prices false or misleading. Further, by retaining the economic benefit of receiving favorable treatment from the executive branch by refraining from seeking tariff refunds without compensating the customers who actually bore the brunt of the tariffs, Amazon has been unjustly enriched. Further, because, to date, Amazon has refused to seek IEEPA refunds, a constructive trust should be established over such rights.

## II.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 Class members are involved; and many members of the proposed Classes are citizens of different states than Defendant.

12.    This Court has personal jurisdiction over Defendant because its United States headquarters is located in Seattle, Washington, and because Defendant committed the acts alleged herein in Washington, regularly conducts business in this District, and has extensive contacts with this forum.

13.    Defendant purposefully availed itself of the Washington market, and thus of the benefits of the laws of the State, during all times relevant to this Complaint, so as to render Washington courts' exercise of jurisdiction over Defendant consistent with traditional notions of fair play and substantial justice.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because: (a) Defendant's U.S. operations are headquartered in this District; (b) a substantial part of the actions and inactions giving rise to Plaintiff's claims occurred in this District; and (c) Defendant transacts substantial business in this District.

## III.    PARTIES

15.    Plaintiff Howard Rosen is a resident of Michigan. He purchased a four-pack of Energizer 2032 batteries manufactured in China from Amazon, for personal use. Plaintiff's purchase

CLASS ACTION COMPLAINT - 3
No. 2:26-cv-1823
011388-11/3597415 V2

was subject to IEEPA tariffs. Amazon paid the tariffs and passed on the tariff costs to Plaintiff, who paid them when he purchased his products. Amazon has not refunded Plaintiff any of the illegal tariff money that he paid, and that Amazon passed on to him.

16. Defendant Amazon.com, Inc. is the world's second largest retailer and largest e-commerce retailer.[8] Its principal executive offices are in Seattle, Washington.

17. Amazon is organized into three segments: North America, International, and Amazon Web Services (AWS). Its online and physical stores allow for hundreds of millions of unique products to be sold both directly by Amazon and also by third-party sellers.

18. Amazon sells goods through its website through a variety of means. Relevant to this action, Amazon is the direct seller of goods that it purchases from wholesale providers and manufacturers. With respect to these products, Amazon purchases them, owns them, and resells them to customers such as Plaintiff and Class members. To the extent that these products are imported and subject to tariffs, as the importer of record, Amazon directly pays any tariffs.

19. This action addresses only goods as to which Amazon was the listed seller.

## IV.   FACTUAL ALLEGATIONS

**A.   Amazon's publicly pronounced "maniacal" focus on low prices for consumers, and guarantee of best prices among major retailers**

20. Amazon has consistently and relentlessly emphasized to its consumers that it sells the consumer goods it offers at the lowest possible prices.

21. Amazon's marketplace business model is built on its reputation as a low-cost seller of goods. Indeed, in January 2025, Defendant boasted that "Amazon aims to provide the best shopping experience by *offering the lowest prices across Earth's largest selection*."[9] The press release emphasized to consumers that "Amazon has *obsessed* over offering customers low prices across our wide selection of products," and that it knew "that people have many options for where

---

[8] *The World's Biggest and Richest Retailers in 2025*, INT'L SUPERMARKET NEWS, Dec. 22, 2025, *at* https://internationalsupermarketnews.com/the-worlds-biggest-and-richest-retailers-in-2025/.

[9] Mickey Toogood, *Amazon pricing strategies: How to price products to drive sales*, Oct. 18, 2024, at https://sell.amazon.com/blog/amazon-pricing-strategies (emphasis added).



to shop, and consistently low prices earn customer trust and keep them coming back."[10] Amazon continued that it "will never stop working hard to compare and match low prices to competitors', making Amazon the place customers think of for low prices."[11]

22. On February 1, 2025, President Donald J. Trump issued three executive orders imposing additional duties on all goods imported from Canada, Mexico, and China purportedly pursuant to IEEPA. Initially, these duties included 25 percent on goods imported from Canada (with a lower additional duty rate of 10 percent on energy or energy resources) and Mexico, and 10 percent on goods imported from China.

23. Analysts predicted that Amazon was the e-commerce retailer that would be most impacted by the IEEPA tariffs, as "roughly 25% of the cost of products directly sold by Amazon come from China."[12] Morgan Stanley estimated that the average exposure to China among the largest e-commerce companies was slightly over 10%. "Fashion retailer Revolve had the second-highest exposure among these companies at 22%. Peloton, Etsy, and Figs are estimated to have less than 3% of their products from China."[13] Amazon, as the importer of record, would be responsible for paying those tariffs.

24. With a large volume of the products it sells being subject to the IEEPA tariffs, without passing the tariffs on to consumers as price increases, the tariffs would have a substantial impact to Amazon's bottom line. Amazon's net operating margin for North American sales was only 6.4% for 2024; for 2023, it was only 4.2%. A minimum of a 10% increase on the cost of goods for 25% of the products it sold would quickly erode its margins. Nonetheless, Amazon doubled down on its low-price promises, suggesting that it would absorb the new tariff costs, while competitors would likely not be able to do so.

25. By April 2025, tariffs on goods imported from China had ballooned to 145%.

---

[10] Amazon Staff, *supra* note 1. (emphasis added).

[11] Amazon Staff, *supra* note 1.

[12] Eugene Kim, *CHART: Here's how much Amazon could be hit by China tariffs*, BUS. INSIDER, Feb. 4, 2025, *at* https://www.businessinsider.com/amazon-trump-china-tariffs-hit-2025-2.

[13] *Id.*

CLASS ACTION COMPLAINT - 5
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

26.     On April 10, 2025, Amazon told consumers that it had done "strategic forward inventory buys" and looked to renegotiate terms on certain purchase orders, while, in contrast, Jassy expected third-party sellers would pass along the increases, reassuring consumers that prices would stay lowest at Amazon when Amazon was the seller and indicating the company would not pass along tariff costs to its customers.[14]

27.     Later that month, a report indicated that Amazon planned to "display how much of an item's cost was derived from tariffs."[15] Commerce Secretary Howard Lutnick called Amazon's move a "hostile act" and called for companies to absorb the new costs.[16] Amazon quickly reversed course, reports say, due to push-back from President Trump in a call to Amazon founder Jeff Bezos.[17] Amazon denied displaying tariff costs was ever the plan and continued to assure customers that it would absorb tariff costs.

28.     On May 1, 2025, Jassy promised that controlling prices in the face of tariffs would be a priority for Amazon.

> It's hard to tell what's going to happen with tariffs right now. It's hard to tell where they're going to settle and when they're going to settle. And so a lot of what we're thinking about, short and medium term actually turns out to be what we think about long term too, which is how do we actually have the broadest possible selection for customers at the lowest possible prices? And *there's maybe never been a more important time in recent memory than than trying to keep prices low, which we're heads-down, pretty maniacally focused on*, and get things to people quickly and take care of customers. And . . . that is the heart of what we're doing.[18]

29.     Later that month, Jassy also advised "[w]e also haven't yet seen any meaningful average selling price increases."[19]

---

[14] Annie Palmer, *Amazon CEO Andy Jassy says he believes sellers will pass increased tariff costs on to consumers*, CNBC, Apr. 10, 2025, *at* https://www.cnbc.com/2025/04/10/amazon-ceo-andy-jassy-says-he-believes-sellers-will-pass-increased-tariff-costs-on-to-consumers.html.

[15] *Amazon to display tariff costs for consumers*, PUNCHBOWL NEWS, Apr. 29, 2025, https://punchbowl.news/article/tech/amazon-display-tariff-costs.

[16] *Id.*

[17] Alayna Treene et al., *A 'p*ssed' Trump called Jeff Bezos after learning Amazon considered breaking out a tariff charge*, CNN, Apr. 29, 2025, https://www.cnn.com/2025/04/29/business/white-house-calls-report-that-amazon-is-adding-a-tariff-charge-a-hostile-action.

[18] Amazon, Earnings Call Transcript, May 1, 2025 (emphasis added), *available at* https://www.investing.com/news/transcripts/earnings-call-transcript-amazon-q1-2025-earnings-beat-expectations-stock-dips-93CH-4018559.

[19] Annie Palmer, *Amazon CEO Andy Jassy says tariffs haven't dented consumer spending*, CNBC, May 21, 2025, *at* https://www.cnbc.com/2025/05/21/amazon-jassy-tariffs.html.

CLASS ACTION COMPLAINT - 6
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

30.   In June 2025, Jassy told CNBC: "We did a lot of forward buying several months ago, and then a lot of our sellers, our third party selling partners, forward deployed a lot of inventory to avoid some of the issues with the uncertainty around where tariffs are going to settle. And we have, so far, not seen prices appreciably go up."[20]

31.   In July 2025, Amazon boasted: "Our commitment to meet or beat the prices of other retailers is unwavering," and concluded by proclaiming "Amazon consistently beats or meets the lowest competitive prices among major retailers, maintaining our unwavering commitment to customer value."[21]

32.   On July 31, 2025, Jassy assured consumers "our prices continue to be low and sharp for customers." Jassy went on to specifically represent that customers who were concerned about the impact of tariffs on prices would do best to shop with Amazon:

> *There continues to be a lot of noise about the impact that tariffs will have on retail prices and consumption*. Much of it thus far has been wrong and misreported. As we said before, it's impossible to know what will happen. . . . . But what we can share is what we have seen thus far, *which is that in the first half of the year, we haven't yet seen diminishing demand or prices meaningfully appreciating*. We also have such diversity of sellers in our marketplace, over two million sellers in total, with different strategies of whether to pass on higher costs to consumers, that *customers are advantaged shopping at Amazon because they are more likely to find lower prices on the items they care about.*[22]

33.   Throughout this period, Amazon could not have been more direct with its customers: in light of the tariffs *other* sellers were passing on to consumers, shop at *Amazon* to get the best prices.

34.   During the period that IEEPA tariffs were in effect, in addition to the aforementioned statements made during earnings calls, Amazon also issued press statements that made even stronger representations about its prices.

---

[20] Julie Coleman, *Despite tariffs, Andy Jassy says Amazon hasn't 'seen prices appreciably go up' so far*, CNBC, June 30, 2025, *at* https://www.cnbc.com/2025/06/30/despite-tariffs-andy-jassy-says-amazon-hasnt-seen-prices-appreciably-go-up-so-far.html.

[21] Amazon Staff, *Amazon sets the record straight: The Wall Street Journal's flawed pricing analysis*, July 25, 2025, *at* https://www.aboutamazon.com/news/retail/amazon-prices-increase-wall-street-journal-flawed-analysis (emphasis added).

[22] Amazon, July 31, 2025 Earnings Call Transcript, *available at* https://www.investing.com/news/transcripts/earnings-call-transcript-amazon-q2-2025-earnings-beat-expectations-93CH-4164802 (emphasis added).

CLASS ACTION COMPLAINT - 7
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

35.   On November 18, 2025, Amazon's CEO of Worldwide Amazon Stores, Doug Herrington, stated: "Customers can trust that when they're shopping Amazon they're getting the most affordable everyday low prices across the widest selection, and that we'll meet or beat the prices of other major retailers. Whether buying everyday household essentials or gifts for friends and family, we're the best place to shop for low prices . . . ."[23] As with Amazon's January 2025 statement guaranteeing "lowest prices," this statement by Amazon was an unequivocal promise from Amazon to its customers not just that its prices would be low, but that they would be lower than the prices of any other major retailer.

36.   On the same day, Amazon issued a separate statement whose headline proclaimed "Amazon offers the lowest prices every day across the widest selection of products … ."[24]

37.   Amazon has also stated that it "is consistently identified as America's lowest-priced online retailer."[25]

**B.   Notwithstanding its promises, Amazon passed on tariff costs, plus more, to consumers.**

38.   Both Plaintiff's experiences and third-party accounts and analysis of Amazon's pricing strategy while tariffs were in effect directly contrasted with Amazon's representations.[26]

39.   On July 20, 2025, the Wall Street Journal published an article revealing that despite its promises, including "[i]n April, [when] Amazon.com said it would hold the line on price," Amazon had raised prices on low-cost consumer goods by more than five percent between January 20, 2025, and July 1, 2025, based on an analysis of pricing on 1,200 items that it sold.[27]

---

[23] Amazon Staff, Amazon is America's low-price leader with prices on average 14% lower than 23 online U.S. retailers, says Profitero study, Nov. 18, 2025, at https://www.aboutamazon.com/news/retail/amazon-low-prices-customers-2025 (emphasis added).

[24] Amazon Staff, Amazon's Commitment to Low Prices Every Day, *at* https://www.aboutamazon.com/news/retail/amazon-orders-savings-discounts-shopping (last updated Nov. 18, 2025).

[25] George Joseph, *Newly unsealed records reveal Amazon's price-fixing tactics, California attorney general claims*, GUARDIAN, Apr. 16, 2026, *at* https://www.theguardian.com/us-news/ng-interactive/2026/apr/16/amazon-price-fixing-california-lawsuit.

[26] Rob Thubron, *Trump tariffs haven't impacted Amazon's prices or consumer spending, says CEO*, TECHSPOT, May 21, 2025, *at* https://www.techspot.com/news/108019-trump-tariffs-havent-impacted-amazon-prices-or-customer.html.

[27] Shane Shifflett et al., *After Pledging to Keep Prices Low, Amazon Hiked Them on Hundreds of Essentials*, WALL. ST. J., July 20, 2025, *available at* https://www.wsj.com/business/retail/amazon-price-hikes-essentials-60a7c7f3.

CLASS ACTION COMPLAINT - 8
No. 2:26-cv-1823
011388-11/3597415 V2

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX



40.     The article also contrasted this with what other big retailers had done, revealing Walmart had lowered prices on the same items by nearly 2% and that Target had raised prices by a much smaller margin as compared to Amazon.

41.     In November 2025, a CNBC report indicated that not only did Amazon pass on the IEEPA tariff costs to consumers, but also that it raised prices at a rate significantly higher than competitors such as Target and Walmart—with prices increasing from January through September 2025 at an average of 5.7%—three times the rate of increase of other retailers, and higher than inflation.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



**Selling price trends**

— AMAZON    — TARGET    — WALMART

5.7%

5.0%

4.0

3.0

2.0    1.7%
       1.7%

1.0

0.0

202,502    202,504    202,506    202,508

Note: Based on website pricing across hardlines, health & beauty, in and outdoor home, pets & consumables and apparel.

Source: DataWeave

CNBC

42.    According to one Amazon price tracker, for the more than seven-year period from approximately October 27, 2017, through approximately January 7, 2025, Amazon sold a four-pack of Energizer 2032 Batteries made in China for $4.89.

43.    According to that same tracker, on approximately June 15, 2025, having no choice but to pass the tariffs on to consumers, Amazon increased prices on the batteries to $5.49. Approximately one week later, Amazon raised prices to $8.77 for the same product. And, on December 2, 2025, Plaintiff purchased two four-packs of Energizer 2032 Batteries made in China and sold by Amazon from Amazon.com for $8.19 per pack.

44.    One month after the IEEPA tariffs were declared illegal by the Supreme Court, Amazon dropped prices for this same product to $4.59, and today, Amazon sells the same four-pack of batteries for $5.38.

45.    We also know Amazon did not absorb tariffs, and, instead, passed them along to consumers, because, Amazon's bottom line did not suffer in 2025. Last year, Amazon's net operating

CLASS ACTION COMPLAINT - 10
No. 2:26-cv-1823
011388-11/3597415 V2

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

margins for North American sales *increased* over 2024 by nearly 8% for the twelve months trailing December 31, 2024 (6.4%), to the twelve months trailing December 31, 2025 (6.9%). This is because it was consumers such as Plaintiff and Class members who were paying the IEEPA tariffs, not Amazon.

**C.     Amazon's concealment and misrepresentations with regard to price increases were an attempt to appease potential governmental contractual counterparties and the administration.**

46.     Historically, Amazon has had a fraught relationship with the United States government. Most recently:

- In 2023, the Federal Trade Commission (along with 17 State Attorneys General) filed a major antitrust lawsuit against Amazon. That lawsuit is still pending.

- In 2023, the FTC also sued Amazon alleging that it had enrolled customers in Amazon Prime without the customers' consent. This lawsuit was settled in 2025.

- In 2023, the United States (through the FTC and DOJ) sued Amazon alleging violations of the Children's Online Protection Act Rule. Amazon immediately settled that lawsuit.

47.     Amazon was also keenly aware of the potential consequences of what may appear to be casual public comments by the current President:

- In July, 2019 President Trump was asked about a $10 billion defense department contract on which Amazon was a bidder. The President said "Which one is that, the Amazon? So, I'm getting tremendous complaints about the contract with the Pentagon and with Amazon. They're saying it wasn't competitively bid . . . ."[28] The contract was awarded to another bidder, leading Amazon to file a challenge in the Court of Federal Claims where it stated "prior to the original award, President Trump repeatedly made clear to the highest echelons of the [DOD] . . . his desire that [Amazon] not receive the contract. The [DOD's] reevaluations on remand reveal that [the DOD] continued to succumb to presidential pressure to steer the JEDI contract away from [Amazon], and that the re-award was the product of bias, bad faith, improper influence, and/or conflicts of interest."[29]

- In 2020, the United States Trade Representative listed Amazon stores in five countries on its annual "Notorious Markets List." Amazon responded by issuing a formal statement saying: "This purely political act is another example of the Administration's notorious pattern of using the U.S. government to advance a personal vendetta against Amazon."[30]

- Aside from these formal federal actions, President Trump publicly threatened to take antitrust action against Amazon in 2018 and suggested that he would change its

---

[28] BRAD STONE, AMAZON UNBOUND, at 361 (2021).

[29] *Amazon Web Servs. v. United States*, 153 Fed. Cl. 602 (2021).

[30] Amazon, *Amazon's Response to Our Wrongful Inclusion on the Notorious Markets List*, Apr. 29, 2020, *at* https://www.aboutamazon.com/news/policy-news-views/amazons-response-to-our-wrongful-inclusion-on-the-notorious-markets-list.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

relationship with the U.S. Postal Service.[31] Third-party accounts indicate that the President personally asked the Postmaster General to double Amazon's rates.[32]

48.    Amazon's fraught history with the current administration's use of executive branch agencies, detailed above, has caused it to respond to the President's imposition of tariffs, and the United States Supreme Court's invalidation of those tariffs, in a different manner than Amazon had to past executive branch initiatives. In the past, Amazon had actively defended its practices and even criticized the administration when it felt that the company was being singled out. But given its experience, Amazon has acquiesced to the President's multiple public requests that it refrain from taking any action in response to the tariffs, in spite of its lowest-price promise to its customers. This acquiescence to the President has included Amazon's decision to refrain from seeking a refund of tariff payments to which it is legally entitled, and which it must seek if it is to keep its promise to its customers of providing them with the lowest possible prices.

49.    On February 1, 2025, President Trump issued Executive Order 14193. This Order imposed a 25% duty on most Canadian and Mexican imports, a 10% duty on most Chinese imports, and a duty of at least 10% on all imports from all trading partners.[33] The President modified these tariffs multiple times after imposing them.[34]

50.    When Executive Order 14193 was issued, Amazon considered listing tariff charges separately on Amazon Haul, its discount platform meant to compete with low-cost foreign e-commerce companies. Press accounts of Amazon's internal deliberations resulted in the White House press secretary denouncing Amazon's consideration of this action, saying she had just spoken to President Trump and that "[t]his is a hostile and political act by Amazon."[35] President Trump also called Amazon founder Jeff Bezos directly about the same matter. President Trump confirmed that the call had occurred, and said "[Jeff Bezos] solved the problem very quickly. Good guy." Amazon

[31] Berkeley Lovelace, Jr. *Trump Says Administration Is Looking Into Antitrust Violations by Amazon, other Tech Giants*, CNBC, Nov. 5, 2018, *at* https://www.cnbc.com/2018/11/05/trump-looking-into-antitrust-violations-against-amazon-other-tech-giants.html.

[32] STONE, *supra* note 28, at 358.

[33] *Learning Res. Inc. v. Trump*, 670 U.S. ----, 146 S. Ct. 628, 630-31 (2026).

[34] *Id.* at 631.

[35] Jeff Stein et al., *Trump Praises Bezos After Amazon Denies Plan To Show Tariffs' Costs*, WASH. POST, Apr. 29, 2025, *available at* https://www.washingtonpost.com/business/2025/04/29/amazon-trump-tariffs-leavitt/.

CLASS ACTION COMPLAINT - 12
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

confirmed that it had considered the idea of listing import charges on Haul, but said "this was never approved and not going to happen."[36]

51.     According to multiple independent accounts, the IEEPA tariffs eventually led to higher prices for Amazon customers. Third-party examinations of Amazon's pricing suggested that the impact of the tariffs was almost immediate for some products. Amazon initially denied this but, as time went by, eventually appeared to concede that the tariffs were beginning to appear in the costs of its goods.

52.     Although Amazon initially claimed in public statements that tariffs were not substantially increasing prices for Amazon customers, independent examinations reached a different conclusion. Price increases were seen both on products sold by Amazon directly, and on products sold on the Amazon platform by third-party sellers. CBS News reported that since the second week in April 2025, sellers on Amazon had raised their prices on nearly 1,000 products, according to data from SmartScout, a price analysis software tool. The average price increase was nearly 30%.[37] A separate study by Reuters also indicated immediate tariff impacts on goods sold by Amazon.[38]

53.     Other media outlets noted that Amazon had passed the cost of tariffs onto its customers through increases in the prices of lower-cost consumer goods. TheStreet.Com noted that although "Amazon CEO Andy Jassy had pledged to shield consumers from the fallout of Trump administration tariffs . . . in reality it seems Amazon is absorbing costs on higher-ticket items while quietly letting prices climb on everyday goods."[39] In July 2025—just over three months from when the new tariffs were first imposed—the Wall Street Journal also published a detailed story titled "After Pledging to Keep Prices Low, Amazon Hiked Them on Hundreds of Essentials," describing how Amazon had raised prices in response to the tariffs. The article noted that "The lowest cost

---

[36] Treene et al., *supra* note 17.

[37] Megan Cerullo, *Amazon sellers are hiking prices on hundreds of goods as tariffs bite*, CBS NEWS MONEYWATCH, Apr. 25, 2025, *at* https://www.cbsnews.com/news/amazon-prices-rising-trump-tariffs-temu-shein/.

[38] Siddharth Cavale, *U.S. Prices for China-Made Goods on Amazon Rise Faster Than inflation, Analysis Shows, as Tariffs Bite*, REUTERS, July 1, 2025, *at* https://www.reuters.com/business/retail-consumer/us-prices-china-made-goods-amazon-rise-faster-than-inflation-analysis-shows-2025-06-30/.

[39] Moz Farooque, *Amazon's Quiet Pricing Twist on Tariffs Stuns Shoppers*, THESTREET.COM, July 21, 2025, *at* https://www.thestreet.com/retail/amazons-quiet-pricing-twist-on-tariffs-stuns-shoppers.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

goods on Amazon saw one of their largest single-day increases on Feb. 15, two days after Trump signed an order suggesting tariffs would apply to most U.S. trading partners."[40]

54. Amazon initially insisted that it had managed to avoid cost increases due to tariffs, in part by advance ordering inventory before tariffs went into effect. But by January 2026, Jassy confirmed that the tariffs had begun to result in higher prices for items listed on Amazon. Jassy said: "So you start to see some of the tariffs creep into some of the prices, some of the items, and you see some sellers are deciding that they're passing on those higher costs to consumers in the form of higher prices, some are deciding that they'll absorb it to drive demand and some are doing something in between. I think you're starting to see more of that impact."[41] Although Jassy was not specific as to which sellers he was referring to, all credible accounts indicate that Amazon Online Store customers paid higher prices on goods as a result of the IEEPA tariffs—the only question is when.

55. The United States Supreme Court ruled on February 20, 2026, that the tariffs imposed in Executive Order 14193 were impermissible because they were not authorized by the statute the President had invoked. In dissent, Justice Kavanaugh noted that "The United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs, even though some importers may have already passed on costs to consumers or others."

56. On March 5, 2026, the United States Court of International Trade ordered U.S. Customs and Border Protection to liquidate any unliquidated entries without regard to the IEEPA tariffs that the U.S. Supreme Court had just declared unenforceable. It further ordered U.S. Customs and Border Protection to reliquidate any liquidated entries for which liquidation had not yet become final, again without including the IEEPA tariffs.[42]

57. United States Customs and Border Protection has established a formal process for processing refund requests for tariffs imposed under IEEPA. The first phase of this process was launched on April 20, 2026. The government estimated that refunds would occur between 60 and 90

---

[40] Shifflet et al., *supra* note 27.

[41] Palmer, *supra* note 7.

[42] *Atmus Filtration, Inc. v. United States*, 2026 WL 679285 (Ct. Int'l Trade Mar. 5, 2026).

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

days from the time of the request.[43] The first phase of the process is limited to "unliquidated entries and certain entries within 80 days of liquidation."

58.    In spite of the fact that the United States Supreme Court has declared the collection of tariffs under IEEPA illegal, the President has personally discouraged Amazon from seeking refunds on behalf of Amazon consumers. In response to a question from a CNBC reporter suggesting that Amazon and Apple specifically might be hesitant to pursue tariff refunds to which they were entitled for fear of offending the President, the President responded "I think it's brilliant if they don't do that. Actually, if they don't do that, they got to know me very well. I'm very honored by what you just said. If they don't do that, I'll remember them."[44]

59.    Amazon has given no indication that it has any intention of seeking to recoup any tariffs that it has had to pay, much less return any of those funds to the customers who had to bear them.

**60.**    By contrast, multiple companies, including FedEx, DHL, UPS, and Costco, have announced their intention to seek refunds for all tariff payments made under IEEPA. FedEx, DHL, and UPS have pledged to return tariff payments directly to customers.

## V.    CLASS ALLEGATIONS

61.    Plaintiff brings this action on behalf of himself, and as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), seeking damages and injunctive relief on behalf of the members of the following nationwide class (the "Class"):

> All persons who, during the period beginning on February 4, 2025, through February 20, 2026, purchased any good subject to IEEPA tariffs from Amazon's Online Stores and paid a surcharge to cover the IEEPA tariffs.

62.    Excluded from the Class are Amazon, its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case

---

[43] U.S. Customs and Border Protection, International Emergency Economic Powers Act (IEEPA) Duty Refunds, *at* https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds.

[44] Dan Mangan & Gabrielle Fonrouge, *Trump Says 'I'll Remember' Companies that Don't Seek Tariff Refunds*, CNBC, Apr. 21, 2026, *at* https://www.cnbc.com/2026/04/21/trump-says-hell-remember-companies-that-dont-seek-tariff-refund.html.

CLASS ACTION COMPLAINT - 15
No. 2:26-cv-1823
011388-11/3597415 V2

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

63. Plaintiff reserves the right to re-define the Class definition prior to class certification and after having the opportunity to conduct discovery.

64. The claims of all Class members derive directly from a single course of conduct by Defendant. Defendant engaged and continues to engage in uniform and standardized conduct toward the putative Class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual Class members.

65. Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

66. **Numerosity**: The members of the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court. There are tens of millions if not hundreds of millions of Class members.[45]

67. The identity of all products encompassed within the Class definition are readily identifiable from Defendant's records. The identity of Class members and their purchase records are available through multiple sources, including Class members' own transaction and payment records, Amazon's records of purchases of products encompassed within the Class definition, and records maintained by consumer's financial institutions.

68. **Commonality and Predominance**: Common questions of law and fact exist as to all Class members. These questions predominate over the questions affecting only individual Class members. Questions of law and fact common to Plaintiff and the Class include, without limitation:

  a. Whether the representations and conduct described herein were deceptive;

  b. Whether Amazon's conduct with regard to IEEPA tariffs and refunds was and is deceptive and unfair;

---

[45] In September 2025, Amazon was reported to have passed 200 million Prime members alone in the United States. Michael Levin & Josh Lowitz, *US Amazon Prime membership Finally Hits 200 Million*, CIRP – AMAZON REPORT, Oct. 14, 2025, at https://cirpamazon.substack.com/p/us-amazon-prime-membership-finally.

CLASS ACTION COMPLAINT - 16
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

c.      Whether Amazon had knowledge that its conduct was deceptive and unfair;

d.      Whether Defendant engaged in unfair trade practices;

e.      Whether Amazon has been unjustly enriched; and

f.      Whether Amazon's actions justify the imposition of a constructive trust.

69.      Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of all the Class members. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

70.      **Typicality**: Plaintiff's claims are typical of the claims of the Class members. Plaintiff and the Class members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them. Plaintiff and all Class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiff's interests coincide with, and are not antagonistic to, those of the other Class members.

71.      **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of Class members, and there are no defenses unique to Plaintiff. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of Class members and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the Class members.

72.      **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class members. The injuries suffered by each Class member are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for the Class members to obtain effective relief from Defendant. Even if Class members could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer

CLASS ACTION COMPLAINT - 17
No. 2:26-cv-1823
011388-11/3597415 V2

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

73.     Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief: This action may properly be maintained as a class action because:

    a.    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant;

    b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c.    Defendant acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

74.     **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendant acted or refused to act on grounds generally applicable to Plaintiff and Class members as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on individual facts or law applicable only to Plaintiff.

## COUNT I:

### WASHINGTON CONSUMER PROTECTION ACT
### Wash. Rev. Code Ann. § 19.86.010 *et seq.*

75.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 74 hereto.

76.     The Washington Consumer Protection Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010.

77.     Amazon's conduct described herein was in the conduct of trade and commerce.

CLASS ACTION COMPLAINT - 18
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

78. Amazon engaged in, and continues to engage in, unfair practices by charging consumers illegal and unlawful tariffs and refusing to refund them.

79. Amazon engaged in unfair and deceptive acts and practices by making material misrepresentations, including: (1) that it was not raising prices as a result of the tariffs, when in fact, it substantially raised prices to pass those tariff costs on to consumers; (2) that it offers the "lowest prices" when in fact it raised prices substantially above its competitors to profit from tariff increases; and (3) that Amazon offered lower prices than its competitors.

80. A reasonable consumer would understand Amazon's representations to mean that Amazon would not pass tariff charges on to consumers and would attempt in good faith to offer its customers the best possible prices.

81. Amazon's conduct in knowingly denying Plaintiff and Class members refunds of the illegal tariff payments they made that only Amazon can acquire is deceptive as a matter of law.

82. Amazon's unfair and deceptive practices harmed and continue to harm the public interest, because consumers paid, and Amazon collected from consumers, tariffs that were illegal when paid. Amazon's refusal to seek refunds of tariffs that it has paid for the purpose of refunding those sums to customers, is likely to cause substantial injury to Plaintiff, Class members, and the public interest, and has the capacity to injure other persons.

83. Amazon's conduct is in violation of the public interest, offends public policy, and is unethical and unscrupulous as those terms are used in federal and Washington tribunals.

84. Consumers cannot reasonably avoid the harm caused by Amazon, as only Amazon can apply for the tariff refunds in question.

85. There are no countervailing benefits to customers or competition of Amazon failing to cause these automatic refunds to be returned to the customers who purchased the goods in question.

86. Plaintiff and Class members have suffered damages in amounts to be determined at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate. Wash. Rev. Code Ann. § 19.86.090.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

## COUNT II:

### UNJUST ENRICHMENT/QUASI-CONTRACT

87. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 74 hereto.

88. Plaintiff and Class members conveyed a benefit on Amazon by paying all or a portion of the IEEPA tariffs owed by Amazon on goods it imported into the United States and sold to Plaintiff and other Class members.

89. Amazon knew it was causing Plaintiff and Class members to pay all or a portion of the IEEPA tariffs owed by Amazon on goods it imported into the United States and sold to Plaintiff and other Class members.

90. In *Learning Resources Inc. v. Trump*, 670 U.S. ----, 146 S. Ct. 628, 630-31 (2026), the United States Supreme Court declared that the IEEPA tariffs are illegal and compelled the United States government to refund such tariffs to importers of record, including Amazon.

91. Allowing Amazon to retain refunds (or the right to refunds) of tariffs that it did not pay, but Plaintiff and Class members paid, would be inequitable and grant Amazon an unjust windfall at the expense of Plaintiff and Class members.

92. This is especially true to the extent that Amazon has refrained from seeking tariff refunds in order to garner the financial advantage that accompanies favorable treatment by federal regulators and governmental contractual counterparties. Based on its past experience with the executive branch generally, and the current President specifically, as enumerated above, Amazon has calculated that the value of favorable legal and regulatory treatment outweighs the financial value of claiming the refunds to which it is legally entitled. But that financial benefit to Amazon has come at Plaintiff's and Class members' expense. The inequity is compounded by Amazon's promise to the Plaintiff and Class members that it would seek the lowest prices on their behalf.

93. Justice and equity demand that Amazon return to Plaintiff and Class members the value of tariffs that Plaintiff and Class members paid for products sold by Amazon, for which Amazon is entitled to a refund.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE　　(206) 623-0594 FAX

**COUNT III:**

**CONSTRUCTIVE TRUST**

94.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 74 hereto.

95.     Amazon maintains legal title to seek refund of IEEPA tariff costs paid by Plaintiff and Class members.

96.     By not seeking tariff refunds and returning those costs paid by Plaintiff and Class members to them for Amazon's own financial benefit, and leveraging that refusal in order to obtain favor with the current administration, Amazon has taken advantage of Plaintiff's and Class members' inability to seek such refunds of illegally collected payments for themselves.

97.     The relationship between Amazon and Plaintiff and Class members is a wholly unequal one.

98.     Because these costs were ultimately paid by Plaintiff and Class members, it would be unconscientious for Amazon to retain the right to seek IEEPA tariff refunds and not exercise that right. Amazon's conduct is particularly unconscientious in light of its promise to the Plaintiff and class members to obtain for them the best possible prices. Accordingly, equity requires that the Court establish a constructive trust on Amazon's right to IEEPA tariff refunds.

99.     The Court has the power to establish such a constructive trust in equity either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right.

100.    Defendant is currently enjoying the beneficial interest of holding Plaintiff's and Class members' property rights, without any compensation to Plaintiff and Class members, in exchange for anticipated valuable, favorable treatment from federal executive branch agencies. It is unconscientious for Amazon to engage in this behavior, and the Court should remedy this inequity by imposing a constructive trust on the IEEPA tariff rights and requiring that those rights be exercised for Plaintiff and Class members who paid tariff costs.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

**JURY TRIAL DEMANDED**

101. Pursuant to Federal Rule of Civil Procedure 38(b)(1), Plaintiff hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in his favor and against Amazon, as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class counsel;

B. Establishment of a constructive trust with regard to any IEEPA tariff refunds to which Amazon would be entitled to seek pursuant to the United States Supreme Court's decision in *Learning Resources Inc. v. Trump*, 670 U.S. ----, 146 S. Ct. 628, 630-31 (2026), and a declaration that those rights be exercised and resulting funds be held for the benefit of Plaintiff and Class members;

C. A declaration that Plaintiff and Class members are entitled to a return of the IEEPA funds they paid to cover an IEEPA tariff surcharge;

D. An injunction enjoining Amazon from continuing to engage in the unlawful, deceptive, and unfair business practices alleged herein and requiring Amazon to seek refunds of all tariff payments it made that have been deemed illegal by the United States Supreme Court, and requiring Amazon to return those refund amounts to the consumers who purchased the goods on which tariffs were levied.

E. Costs, damages, including treble damages, and disgorgement in an amount to be determined at trial;

F. Pre- and post-judgment interest; and

G. Such other and further relief as may be appropriate.



DATED: May 28, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
   Steve W. Berman (SBN 12536)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
      sydney.thomas@hbsslaw.com

Dana Abelson (SBN 63278)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 N Cityfront Plaza Dr. Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Email: dana.abelson@hbsslaw.com

Kelly L. Tucker*
Matthew Denn*
**GRANT & EISENHOFER P.A.**
123 Justison Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 622-7000
Email: ktucker@gelaw.com
      mdenn@gelaw.com

Thomas Walsh*
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Email: twalsh@gelaw.com

**pro hac vice* application to be filed

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 23
No. 2:26-cv-1823
011388-11/3597415 V2

HAGENS BERMAN